**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| **LISA GOODSON,** | |
| Plaintiff, | |
| v. | Case No.: 1:25-cv-01208-RLY-CSW |
| **IQVIA HOLDINGS, INC.,** | |
| Defendant. | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant IQVIA Holdings, Inc. ("IQVIA") respectfully submits its Answer to Plaintiff Lisa Goodson's Complaint.

## I.    INTRODUCTION

1.    Lisa Goodson ("Plaintiff" or "Ms. Goodson") applied for the position of Assistant Director of Patient Engagement Strategy, a fully remote role with IQVIA Holdings, Inc., ("Defendant" or "IQVIA") on March 7, 2023.

**ANSWER:**    IQVIA admits Plaintiff applied for the position of Assistant Director of Patient Engagement strategy with IQVIA Inc. on or about March 7, 2023.  IQVIA denies the remaining allegations contained in Paragraph 1 of Plaintiff's Complaint.

2.    Throughout March of 2023, Ms. Goodson spoke with IQVIA's Human Resources ("HR") personnel for preliminary interviews and was never informed the position required COVID-19 vaccination.

**ANSWER:**    IQVIA admits Plaintiff interacted with some of its personnel during an interview process following her application of employment for the Director of Patient Engagement Strategy position.  IQVIA denies the remaining allegations contained in Paragraph

2 of Plaintiff's Complaint.

3.         Ms. Goodson met with several members of the IQVIA leadership team, as recommended to her by other employees at IQVIA, and during these discussions was told she was well qualified for the role she was applying for.

**ANSWER:**    Admitted Plaintiff spoke with some IQVIA personnel following her application of employment for the Director of Patient Engagement Strategy position. IQVIA is without knowledge or information sufficient to form a belief as to whether and what "other employees" at IQVIA "recommended to" Plaintiff. IQVIA denies the remaining allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.         On April 4, 2023, Ms. Goodson formally interviewed with Patrick Bosco ("Mr. Bosco"), the Head of Patient Engagement Strategy and hiring manager for the role that Ms. Goodson applied for.

**ANSWER:**     IQVIA admits Plaintiff interviewed with Head of Patient Engagement and Strategy Paul Bosco.  IQVIA denies any remaining allegations contained in Paragraph 4 of Plaintiff's Complaint.

5.         The interview went well, and Mr. Bosco followed up by email with Ms. Goodson to ask her to complete a sample project so that IQVIA could evaluate her work product.

**ANSWER:**    IQVIA is without knowledge or information sufficient to form a belief as to Plaintiff's subjective assessment of how her interview with Mr. Bosco went and therefore denies the same.  IQVIA denies any remaining allegations contained in Paragraph 5 of Plaintiff's Complaint.

6.         Immediately following the interview, Ms. Goodson, for the first time, noticed on the online job description that the position she applied for required COVID-19 vaccination.

**ANSWER:**    IQVIA is without knowledge or information sufficient to form a belief as to what Plaintiff noticed and when and therefore denies the allegations contained in Paragraph 6 of Plaintiff's Complaint. .

7.    Ms. Goodson reached out to IQVIA's HR personnel and Mr. Bosco to inquire whether she would be required to receive a COVID-19 vaccination to be hired.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 7 of Plaintiff's Complaint.

8.    She spoke with Shallu Magotra ("Ms. Magotra"), an IQVIA Talent Acquisition Manager, on April 4, 2023, and inquired about IQVIA's COVID-19 vaccination policy and religious and medical exemption process. Ms. Magotra informed Ms. Goodson that she had to speak with Mr. Bosco to confirm that COVID-19 vaccination was a requirement for the position that Ms. Goodson applied for.

**ANSWER:**    IQVIA admits Plaintiff interacted with Ms. Magotra in connection with her employment application.  IQVIA denies any remaining allegations or implications contained in Paragraph 8 of Plaintiff's Complaint.

9.    Ms. Goodson was advised by Mr. Bosco on April 6, 2023, that he was unsure of IQVIA's corporate policy on whether she had to be fully vaccinated for COVID-19 to work for IQVIA, but he saw no reason why the role would require her to be vaccinated because it was a remote position. He stated that he would follow up with HR on the corporate policy and advise her of the same.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.    Ms. Goodson did not receive a response for approximately two weeks after

these conversations. Consequently, she was forced to follow up on her own volition.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 10 of Plaintiff's Complaint.

11.    On April 18, 2023, Mr. Bosco replied to Ms. Goodson and informed her that he was having a difficult time receiving concrete information on IQVIA's COVID-19 vaccination policy and whether it was a requirement for the remote position that Ms. Goodson interviewed for.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.    Shortly thereafter, on April 19, 2023, Ms. Goodson received a voicemail from "Anita" (last name unknown), who was Ms. Magotra's assistant. Anita advised that Ms. Goodson's position required receipt of a COVID-19 vaccine. The assistant did not mention any religious or medical accommodation process for this condition of employment.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 12 of Plaintiff's Complaint.

13.    Ms. Goodson was told to cease work on the sample project she was given because she was no longer being considered for the position because she was not fully vaccinated for COVID-19.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 13 of Plaintiff's Complaint.

14.    On April 20, 2023, Ms. Goodson again emailed Ms. Magotra and Mr. Bosco and requested them to provide details on their COVID-19 religious and medical accommodation process and again advised that she would be seeking an exemption to the COVID-19 vaccination

requirement, in accordance with federal law.

**ANSWER:** IQVIA admits on or about April 20, 2023, Plaintiff emailed Ms. Magotra and Mr. Bosco in relation to her question around any COVID-19 vaccination requirements relevant to the position she was seeking. IQVIA denies any remining allegations or implications contained in Paragraph 14 of Plaintiff's Complaint.

15. On or about May 4, 2023, Ms. Magotra advised Ms. Goodson on a telephone call that Ms. Goodson would no longer be considered for the position because she was not fully vaccinated for COVID-19. Ms. Magotra would not apprise Ms. Goodson of any exemption or accommodation process, despite multiple attempts by Ms. Goodson to solicit information on how to apply for an exemption. Ms. Magotra advised that while it was not a corporate policy, in reckless disregard of applicable anti-discrimination laws, Mr. Bosco was requiring COVID-19 vaccination and was not permitting any exemptions for the role.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 15 of Plaintiff's Complaint.

16. Ms. Goodson was informed by Ms. Magotra that Mr. Bosco required her to be vaccinated for COVID-19 due to the unknown possibility in the future that she might need to travel, despite the position being confirmed as fully remote and not requiring travel, according to Mr. Bosco.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17. As a Christian, Ms. Goodson is a member of a protected class.

**ANSWER:** IQVIA is without knowledge or information sufficient to form a belief as to whether Plaintiff is a Christian and therefore denies the allegations contained in Paragraph 17

of Plaintiff's Complaint.

18.      Ms. Goodson is precluded from receipt of a COVID-19 vaccine due to her sincerely held religious beliefs in conflict with receipt of a COVID-19 vaccine, stemming from her Christian faith.

**ANSWER:**   The allegations in Paragraph 18 of Plaintiff's Complaint are conclusions of law to which no response is required. To the extent a response is , IQVIA is without knowledge or information sufficient to for a belief as to the truth of the allegations contained in Paragraph 18 of Plaintiff's Complaint and therefore denies the same.

19.      In addition, Ms. Goodson notified IQVIA that her physician could provide proof of her need for a medical accommodation from the vaccination requirement.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 15 of Plaintiff's Complaint.

20.      Ms. Goodson was qualified for the position that she applied for.

**ANSWER:**   The allegations in Paragraph 20 of Plaintiff's Complaint are legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.      IQVIA was an "employer" for purposes of Title VII.

**ANSWER:**   IQVIA admits, for purposes of this Answer only, it is an "employer" for purposes of Title VII. IQVIA denies it is liable to Plaintiff in any manner.

22.      IQVIA rejected Ms. Goodson for the position she applied for because she advised IQVIA that she was requesting a religious and medical accommodation to their COVID-19 vaccination requirement.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 22 of Plaintiff's

Complaint.

23.     IQVIA never again reached out to provide Ms. Goodson any further information about an IQVIA exemption or accommodation policy that would enable Ms. Goodson to continue to be considered for the position.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.     IQVIA ultimately filled the position with an applicant outside of Ms. Goodson's protected classes or, alternatively, IQVIA left the position open despite rejecting Ms. Goodson's application.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.     IQVIA took adverse employment action against Ms. Goodson when it refused to provide her their exemption and accommodation process to apply for an exemption for the COVID-19 vaccination requirement due to its bias against those who were precluded from receiving a COVID-19 vaccine due to their sincerely held religious beliefs and/or medical conflict with receipt of a COVID-19 vaccine.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.     At this time, Defendant knew that COVID-19 vaccination was not a prerequisite for travel.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.     At this time, Defendant had actual knowledge, through its own business records and through public heath guidance, that the COVID-19 vaccines did not prevent the

transmission and infection of COVID-19.

     **ANSWER:**   IQVIA denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.

     28.     Because of this, Defendant pretextually refused to hire Ms. Goodson with actual knowledge that her vaccination status posed no greater health or safety threat to anyone than the threat posed by a vaccinated employee.

     **ANSWER:**   IQVIA denies the allegations contained in Paragraph 28 of Plaintiff's Complaint.

     29.     Ms. Goodson could have performed her essential job duties exceptionally well, particularly given that she was qualified for the position and that she applied to a fully remote role.

     **ANSWER:**   The allegations in Paragraph 29 of Plaintiff's Complaint are legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 29 of Plaintiff's Complaint.

     30.     Defendant understood that a reasonable accommodation was possible, particularly, testing (potentially at the employee's expense) in conjunction with other enhanced safety protocols, in the unshown event that Ms. Goodson was required in the future to travel for her role and vaccination or testing became required.

     **ANSWER:**   IQVIA denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.

     31.     Ms. Goodson could have been accommodated without any hardship whatsoever, and in a manner that would have created a safer workplace than requiring vaccination alone.

**ANSWER:** The allegations in Paragraph 31 of Plaintiff's Complaint are legal conclusions to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32.     No reasonable accommodation was ever offered or discussed with Ms. Goodson, and worse, she was not even provided any form to submit an exemption request, despite her repeated requests regarding IQVIA's accommodation process.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 32 of Plaintiff's Complaint.

33.     In fact, Ms. Goodson, despite her efforts, was never provided any information about the exemption process. She was informed by IQVIA personnel, in reckless disregard of applicable legal requirements, that there were no exemptions for its COVID-19 vaccination requirement for this role.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 33 of Plaintiff's Complaint.

34.     Any assertion that accommodating Ms. Goodson would cause Defendant undue hardship based on workplace safety rationales is pretextual and is otherwise based on hypotheticals and raw speculation.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 34 of Plaintiff's Complaint.

35.     Defendant had actual knowledge that Ms. Goodson could have been hired and accommodated without any hardship whatsoever, and in a manner that would have created a safer workplace than requiring vaccination alone.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 35 of Plaintiff's

Complaint.

36.    Defendant could have hired and accommodated Ms. Goodson at no cost or purported risk to its workplace through simply observing the status quo of the position, fully remote work, or employing enhanced safety protocols that were already in place.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.    IQVIA, therefore, cannot show that it would have been a "substantial burden" or expense to have accommodated Ms. Goodson's religious beliefs. *See Groff v. DeJoy*, 600 U.S. 447, 470 (2023) (holding that, under Title VII, employers must accommodate their employee's religious beliefs short of "substantial burden" or expense when viewed in light of the particular businesses' capabilities to accommodate).

**ANSWER:**    The allegations contained in Paragraph 37 of Plaintiff's Complaint are conclusions of law to which no response it required.  To the extent a response is required, IQVIA denies the allegations in Paragraph 37 of Plaintiff's Complaint.

38.    Defendant violated Title VII (42 U.S.C. § 2000e-2 *et seq.*) by failing to engage in a good faith interactive process to determine if a reasonable accommodation existed for Ms. Goodson by failing to provide so much as a form for Ms. Goodson to request an exemption or even information about the exemption process.

**ANSWER:**    The allegations contained in Paragraph 38 of Plaintiff's Complaint are conclusions of law to which no response it required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.    Defendant violated Title VII (42 U.S.C.  § 2000e-2 *et seq.*) by failing to hire Ms. Goodson due to her membership in a protected class because Defendant rejected her

application after Ms. Goodson advised Defendant she had religious beliefs precluding receipt of a COVID-19 vaccine.

**ANSWER:**   The allegations contained in Paragraph 39 of Plaintiff's Complaint are conclusions of law to which no response it required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.        Accordingly, Ms. Goodson seeks damages, including back pay, front pay, loss of salary increases, lost benefits, compensatory damages, damages for emotional distress, pain and suffering, punitive damages, and reasonable attorneys' fees and costs, declaratory relief, injunctive relief, as well as any other relief to which he is entitled.

**ANSWER:**   IQVIA admits Plaintiff purports to proceed as stated in Paragraph 40 of her Complaint, but denies she is entitled to any relief whatsoever.  IQVIA specifically denies any liability to Plaintiff in any manner.

## II.      PARTIES

41.        Plaintiff Lisa Goodson is currently a resident of Zionsville, Indiana.

**ANSWER:**   Admitted, upon information and belief.

42.        Defendant IQVIA was at all relevant times headquartered at 2400 Ellis Road, Durham, North Carolina, 27703, and has worldwide operations, including in this jurisdiction.

**ANSWER:**   IQVIA admits, for purposes of this Answer only, that IQVIA Inc. is headquartered at 100 IMS Drive, Parsippany, New Jersey 07054.  IQVIA denies the remaining allegations contained in Paragraph 42 of Plaintiff's Complaint.

## III.      JURISDICTION AND VENUE

43.        This Court has original jurisdiction of this civil action, pursuant to 28 USC

§1331, as one arising under the laws of the United States. *See* 28 USC §1331.

**ANSWER:**    The allegations contained in Paragraph 43 of Plaintiff's Complaint are conclusions of law to which no response is required. To the extent a response is required, IQVIA admits that this Court has jurisdiction over Plaintiff's claims.

44.    This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq*.

**ANSWER:**    The allegations contained in Paragraph 44 of Plaintiff's Complaint are conclusions of law to which no response is required. To the extent a response is required, IQVIA admits that this Court has jurisdiction over Plaintiff's claims.

45.    This Court has jurisdiction over Plaintiff Lisa Goodson, who at all relevant times hereto, resided in Zionsville, Indiana.

**ANSWER:**    The allegations contained in Paragraph 45 of Plaintiff's Complaint are conclusions of law to which no response is required. To the extent a response is required, IQVIA admits that this Court has jurisdiction over Plaintiff in this matter.

46.    This Court has jurisdiction over IQVIA, who was at all relevant times hereto, doing business in this district.

**ANSWER:**    The allegations contained in Paragraph 46 of Plaintiff's Complaint are conclusions of law to which no response is required. To the extent a response is required, IQVIA admits that this Court has jurisdiction over it in this matter.

47.    Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the "unlawful employment practice[s]" giving rise to this lawsuit took place within and were "committed" in this District and Ms. Goodson would have worked in this district had there been no Title VII violation. 42 U.S.C. § 2000e-5(f)(3).

**ANSWER:** The allegations contained in Paragraph 47 of Plaintiff's Complaint are conclusions of law to which no response is required. To the extent a response is required, IQVIA admits that venue is properly laid in this Court.

## IV.     FACTUAL ALLEGATIONS

### *Ms. Goodson's Application and IQVIA's Unlawful Rejection*

48.     Ms. Goodson applied for the position of Assistant Director of Patient Engagement Strategy, a fully remote role with IQVIA on March 7, 2023.

**ANSWER:** IQVIA admits Plaintiff applied for the position of Assistant Director of Patient Engagement Strategy on or about March 7, 2023. IQVIA denies the remaining allegations contained in Paragraph 48 of Plaintiff's Complaint.

49.     Dustin Douglas ("Mr. Douglas") of IQVIA's HR team emailed Ms. Goodson the next day to set up an interview with her.

**ANSWER:** IQVIA admits Dustin Douglas contacted Plaintiff to facilitate an interview for the Assistant Director of Patient Engagement Strategy role. IQVIA denies the remaining allegations contained in Paragraph 49 of Plaintiff's Complaint.

50.     On or about March 13, 2023, Ms. Goodson interviewed with Mr. Douglas. The interview went well, and Mr. Douglas invited Ms. Goodson to interview with Mr. Bosco, the hiring manager for the role that Ms. Goodson applied for.

**ANSWER:** IQVIA admits Dustin Douglas facilitated an interview with Mr. Bosco. IQVIA is without knowledge or information sufficient to form a belief as to Plaintiff's assessment of how her "interview" with Mr. Douglas went and therefore denies the same. IQVIA denies the remining allegations contained in Paragraph 50 of Plaintiff's Complaint.

51.     Ms. Magotra reached out to Ms. Goodson on March 30, 2023, to set up the

formal interview with Mr. Bosco.

**ANSWER:** IQVIA admits Ms. Magotra facilitated setting up an interview for Plaintiff with Bosco in March 2023. IQVIA denies the remaining allegations contained in Paragraph 51 of Plaintiff's Complaint.

52.     On April 4, 2023, Ms. Goodson formally interviewed with Mr. Bosco.

**ANSWER:** IQVIA admits Plaintiff interviewed with Mr. Bosco in April 2023. IQVIA denies the remining allegations contained in Paragraph 52 of Plaintiff's Complaint.

53.     The interview went well, and Mr. Bosco invited Ms. Goodson to complete a sample analysis project so IQVIA could evaluate her work product while considering her for the position. Mr. Bosco sent an email to Ms. Goodson to provide her with the specifics of the project. This "Interview Work Study" required Ms. Goodson to propose a solution to a hypothetical problem and provide a presentation to IQVIA based on her recommendations.

**ANSWER:** IQVIA is without knowledge or information sufficient to form a belief as to Plaintiff's assessment of how her interview with Mr. Bosco went and therefore denies the same. IQVIA denies the remaining allegations contained in Paragraph 53 of Plaintiff's Complaint.

54.     On April 4, 2023, following the interview, Ms. Goodson, for the first time noticed that the online job description for the position she applied for indicated it required a COVID-19 vaccination.

**ANSWER:** IQVIA is without knowledge or information sufficient to form a belief as to the truth of what or when Plaintiff noticed following her interview with Mr. Bosco and therefore denies the same. IQVIA denies the remaining allegations contained in Paragraph 54 of Plaintiff's Complaint.

55.     On April 4, 2023, Ms. Goodson reached out to Ms. Magotra to inquire whether

she would be required to receive a COVID-19 vaccination to be hired and inquired as to IQVIA's religious and medical accommodation policy.

**ANSWER:**    IQVIA admits Plaintiff requested information regarding any COVID-19 vaccine requirements from Ms. Magotra in connection with her application for employment. IQVIA denies the remaining allegations contained in Paragraph 55 of Plaintiff's Complaint.

56.    On April 5, 2023, Ms. Magotra responded via email that she would need to speak to Mr. Bosco as to the COVID-19 vaccination requirement.

**ANSWER:**    IQVIA admits Ms. Magotra advised by email that Plaintiff would need to address questions around any COVID-19 vaccination requirement with Mr. Bosco.  IQVIA denies the remining allegations or implications contained in Paragraph 56 of Plaintiff's Complaint.

57.    On April 6, 2023, Ms. Goodson also reached out to Mr. Bosco via email who advised Ms. Goodson that he was unsure of the COVID-19 vaccination requirement for her position as "vaccines are not required for travel," but that he would discuss with HR about IQVIA's corporate policy and provide this information to Ms. Goodson. Mr. Bosco stated, "I don't think there is anything in this role that would require it (e.g. going to HCP offices, etc.), but we do need to follow corporate policy."

**ANSWER:**    IQVIA admits Plaintiff requested information from Mr. Bosco regarding any COVID-19 vaccination requirements and Mr. Bosco stated, in part, he was unsure of the current status of any such requirement, and further stated, "I don't think there is anything in this role that would require it (e.g. going to HCP offices, etc.), but we do need to follow corporate policy."  IQVIA denies the remaining allegations contained in Paragraph 57 of Plaintiff's Complaint.

58.       On April 18, 2023, when Ms. Goodson did not receive an immediate update from Ms. Magotra, she followed up with Mr. Bosco to inquire if the role required receipt of a COVID-19 vaccine so that she could, in accord with federal law, submit an exemption request to the COVID-19 vaccine requirement and continue with the next steps in the process.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 58 of Plaintiff's Complaint.

59.       Mr. Bosco replied to advise that he was having a difficult time receiving concrete information on IQVIA's COVID-19 vaccination policy from his HR partner and whether it was a requirement for the position that Ms. Goodson applied for.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 59 of Plaintiff's Complaint.

60.       On April 19, 2023, Ms. Goodson received a voicemail from "Anita" (last name unknown), who identified herself as Ms. Magotra's assistant. Anita advised Ms. Goodson that her position required receipt of a COVID-19 vaccine. Notably, Anita did not mention that IQVIA had any exemption process for this condition of employment.

**ANSWER:**    IQVIA is without knowledge or information sufficient to form a belief as to what voicemail Plaintiff received and when and therefore denies same.

61.       Ms. Goodson was told to cease work on the sample project she was given because she was no longer being considered for the position because she was not fully vaccinated for COVID-19.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 61 of Plaintiff's Complaint.

62.       On April 20, 2023, confused by the lack of exemption process, Ms. Goodson

again emailed Ms. Magota and Mr. Bosco and requested them to provide details on their COVID-19 religious and medical accommodation process.

**ANSWER:**     IQVIA is without knowledge or information sufficient to form a belief as to what Plaintiff was confused by and therefore denies same. IQVIA denies the remaining allegations contained in Paragraph 62 of Plaintiff's Complaint.

63.     After emails back and forth to try and get a firm answer from IQVIA on how to submit an exemption request to their COVID-19 vaccination requirement, Ms. Goodson received a phone call from Ms. Magotra. Ms. Magotra left Ms. Goodson a voicemail on May 1, 2023, that the COVID-19 vaccination policy had not changed, it would still be required for Ms. Goodson to be considered for the position.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 63 of Plaintiff's Complaint.

64.     Ms. Goodson called Ms. Magotra back and left her a voicemail requesting information on the exemption process and advising that she would be requesting a religious and medical exemption to the COVID-19 vaccination requirement.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 64 of Plaintiff's Complaint.

65.     On or about May 4, 2023, Ms. Magotra advised Ms. Goodson that it was up to Mr. Bosco whether she would be required to be vaccinated for COVID-19. Because Mr. Bosco was concerned that COVID-19 vaccination may, hypothetically, be required for travel in the future, he determined that Ms. Goodson had to be fully vaccinated for COVID-19. She further advised that Ms. Goodson would no longer be considered for the position she applied for because she wanted to apply for an exemption for religious/medical purposes to the COVID-19 vaccine

requirement.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 65 of Plaintiff's Complaint.

66.     Ms. Magotra further advised that this decision came directly from Mr. Bosco.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 66 of Plaintiff's Complaint.

67.     Ms. Goodson continued to inquire about IQVIA's exemption process because a religious/medical exemption process is required under the law and mentioned again that she wanted to request a religious/medical exemption, but despite her many efforts, was never given any information about any exemption process. Instead, Ms. Goodson was advised that Mr. Bosco was requiring COVID-19 vaccination, period, for the position.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 67 of Plaintiff's Complaint.

68.     Ms. Goodson was qualified for the position that she applied for.

**ANSWER:**   The allegations in Paragraph 68 of Plaintiff's Complaint are legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 68 of Plaintiff's Complaint.

69.     IQVIA rejected Ms. Goodson for the position she applied for because she advised IQVIA that she was going to request an accommodation to the COVID-19 vaccination requirement due to her medical/religious conflict with receipt of a COVID-19 vaccine.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 69 of Plaintiff's Complaint.

70.     IQVIA never again reached out to provide Ms. Goodson any further

information about the position.

      **ANSWER:**    IQVIA denies the allegations contained in Paragraph 70 of Plaintiff's Complaint.

      71.    IQVIA filled the position with an applicant outside of Ms. Goodson's protected class.

      **ANSWER:**    IQVIA denies the allegations contained in Paragraph 71 of Plaintiff's Complaint.

      72.    Alternatively, IQVIA left the position open after learning Ms. Goodson was going to assert her Title VII rights which they had no intention to honor due to religious bias.

      **ANSWER:**    IQVIA denies the allegations contained in Paragraph 72 of Plaintiff's Complaint.

      *The Associate Director, Patient Engagement Strategy Remote Role*

      73.    The position that Ms. Goodson applied for, Associate Director, Patient Engagement Strategy, is a fully remote role.

      **ANSWER:**    IQVIA denies the allegations contained in Paragraph 73 of Plaintiff's Complaint.

      74.    The job posting lists the position as "Remote" with the primary location of Ms. Goodson's office being in her home in Indiana.

      **ANSWER:**    IQVIA denies the allegations contained in Paragraph 74 of Plaintiff's Complaint.

      75.    When Ms. Goodson asked Mr. Bosco about the COVID-19 vaccination requirement, Mr. Bosco advised Ms. Goodson "I don't think there is anything in this role that would require it [COVID-19 vaccination] (e.g., going to HCP offices, etc.), but we do need to

follow corporate policy."

**ANSWER:** IQVIA denies the allegations contained in Paragraph 75 of Plaintiff's Complaint.

76. On Ms. Goodson's final call with Ms. Magotra, Ms. Magotra admitted this was a fully remote position, but stated that there was potential, in the future, that a client of IQVIA may require travel to their sites, and because of that, Mr. Bosco decided he must have a fully vaccinated employee in this position.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 76 of Plaintiff's Complaint.

77. Because of these admissions, any allegation that Ms. Goodson's role was not fully remote, or moreover, that she would have to be vaccinated to visit clients at some hypothetical point in the future, is pretext for discrimination.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 77 of Plaintiff's Complaint.

78. The real reason IQVIA cancelled Ms. Goodson's job application is because the company was motivated to avoid accommodating her religious beliefs in conflict with vaccination.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 78 of Plaintiff's Complaint.

### *Ms. Goodson's Religious Background and Religious Conflict with Receipt of a COVID-19 Vaccine*

79. Ms. Goodson is a Christian and a member of True Hope Ministry led by Pastor David Hall and attends church services at Traders Point Christian Church in Zionsville, Indiana.

Case 1:25-cv-01208-RLY-CSW    Document 9    Filed 08/19/25    Page 21 of 46 PageID #: 83

**ANSWER:**    IQVIA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 of Plaintiff's Complaint and therefore denies the same.

80.    Ms. Goodson's sincerely held religious beliefs preclude her from receipt of a COVID-19 vaccine. Ms. Goodson believes that the body is the temple of the Holy Spirit and that God created humans with a well-designed immune system. As a Christian, she objects to the intrusion of medical interventions that she deems are designed to modify God's perfect design of the immune system.

**ANSWER:**    The allegations in Paragraph 80 of Plaintiff's Complaint are conclusions of law to which no response is required. To the extent a response is deemed necessary, IQVIA is without knowledge or information sufficient to form a belief as to what Plaintiff believes or objects to and therefore denies the same.

81.    Ms. Goodson believes it is an affront to her religious faith to inject the body with a man-made substance in an effort to "improve" the immune system because God has already created the body with natural immune mechanisms to ward off disease. In other words, Ms. Goodson, for religious reasons, does not preemptively tinker with the immune system God designed, believing that to do so shows a lack of faith in God.

**ANSWER:**    IQVIA is without knowledge or information sufficient to form a belief as to what Plaintiff believes and therefore denies the same.

82.    In addition, Ms. Goodson cannot use any product that takes its origin in abortion, the killing of human life, a proposition she finds support for in scripture. COVID-19 vaccines have ties to aborted fetal cell lines in their testing, manufacturing, and/or production. Ms. Goodson will not knowingly participate in an act—here, receipt of a COVID-19 vaccine—

8/19/2025 3:09 PM

21

that she believes violates the sanctity of human life and dishonors the lives of the unborn.

**ANSWER:** IQVIA is without knowledge or information sufficient to form a belief as to what product Plaintiff believes she cannot use or in what activities she will not knowingly participate and therefore denies the same. IQVIA denies the remaining the allegations contained in Paragraph 82 of Plaintiff's Complaint.

### *Events Following Pretextual Termination of Job Application*

83.    After her job application was pretextually terminated on or about May 4, 2023, Ms. Goodson timely filed a Complaint of Discrimination with the Indiana Civil Rights Commission ("ICRC") on May 22, 2023. She advised that once she inquired about an exemption to Defendant's COVID-19 vaccination requirement, she was immediately rejected from employment with them due to Defendant's discriminatory policy to decline all exemption requests, in violation of Title VII of the Civil Rights Act of 1964.

**ANSWER:** IQVIA admits Plaintiff filed a Charge of Discrimination with the Indiana Civil Rights Commission, but denies it is liable to Plaintiff in any manner. IQVIA is without knowledge or information sufficient to form a belief as to the truth of what Plaintiff advised the Indiana Civil Rights Commission on in relation to her Charge and therefore denies the same. IQVIA denies the remaining allegations contained in Paragraph 83 of Plaintiff's Complaint.

84.    Ms. Goodson's charge of discrimination was dual filed with the Employment Opportunity Commission ("EEOC").

**ANSWER:** IQVIA admits the allegations contained in Paragraph 84 of Plaintiff's Complaint, but denies it is liable to Plaintiff in any manner.

85.    The ICRC made a lack of probable cause finding.

**ANSWER:** IQVIA admits the allegations contained in Paragraph 84 of Plaintiff's

Complaint, but denies it is liable to Plaintiff in any manner.

86.     Ms. Goodson requested that the EEOC Conduct a substantial weight review of the ICRC's determination.

**ANSWER:**     IQVIA is without knowledge or information sufficient to form a belief as to what Plaintiff requested from the EEOC and therefore denies the same.  IQVIA denies the remaining allegations or contained in Paragraph 86 of Plaintiff's Complaint.

87.     On March 20, 2025, the EEOC issued Ms. Goodson her Notice of Right to Sue letter.

**ANSWER:**     IQVIA is without knowledge or information sufficient to form a belief as to when or whether contained in Paragraph 87 of Plaintiff's Complaint and therefore denies the same.

## V.     CAUSES OF ACTION

## COUNT ONE

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Religious Discrimination – Disparate Treatment/Failure to Hire**

88.     Ms. Goodson incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

**ANSWER:**     IQVIA incorporates its responses to Paragraphs 1 – 87 of Plaintiff's Complaint as if set forth fully herein.

89.     Title VII of the Civil Rights Act of 1964, as amended in 1972, makes it unlawful for an employer to discriminate against an employee on the basis of religion. 42 U.S.C. § 2000e- 2(a)(1).

**ANSWER:**     Paragraph 89 of Plaintiff's Complaint contains legal conclusion to which no

response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 89 of Plaintiff's Complaint.

90.    Title VII was designed to protect employees from the workplace effects of many of the same forms of discrimination that are forbidden by the Constitution — discrimination on the basis of race, color, religion, gender, and national origin."); *see also EEOC v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1117 (10th Cir. 2013) (recognizing reliance placed on First Amendment cases in defining religion for purposes of Title VII), *rev'd on other grounds.*

**ANSWER:**    Paragraph 90 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 90 of Plaintiff's Complaint.

91.    The statute states that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" *Id.* The term "religion" as used within Title VII includes "all aspects of religious observance and practice, as well as belief." *Id.*

**ANSWER:**    Paragraph 91 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 91 of Plaintiff's Complaint.

92.    Title VII prohibits employers from discriminating against employees on the basis of religion. 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . .").

**ANSWER:**    Paragraph 92 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 92 of Plaintiff's Complaint.

93.    "Religion" is defined to include all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C.S. § 2000e(j). Because this definition includes a requirement that an employer "accommodate" an employee's religious expression, an employee is not limited to the disparate treatment theory to establish a discrimination claim.

**ANSWER:**    Paragraph 93 of Plaintiff's Complaint contains legal conclusion to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 93 of Plaintiff's Complaint.

94.    To establish a *prima facie* case for failure to hire under Title VII, a Plaintiff must present evidence that: "1) [s]he is a member of a protected class; 2) [s]he was qualified for an open position for which [s]he applied; 3) [her] application for employment was rejected; and 4) Defendant filled the position with someone not of [her] protected class or the position remained open." *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005).

**ANSWER:**    Paragraph 94 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 94 of Plaintiff's Complaint.

95.    "A plaintiff may satisfy [the prima facie burden] by presenting evidence 'that

she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Ames v. Ohio Dep't of Youth Servs.*, 221 L.Ed. 2d 929, 934 (U.S. 2025).

**ANSWER:** Paragraph 95 of Plaintiff's Complaint contains legal conclusions to which no response is required. To the extent a response is required, IQVIA denies the allegations contained in Paragraph 95 of Plaintiff's Complaint.

96. If these elements are established, discrimination is inferred and the burden of production shifts to the Defendant to raise a legitimate, nondiscriminatory reason for the adverse employment action. *See Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 600 (7th Cir. 2010).

**ANSWER:** Paragraph 96 of Plaintiff's Complaint contains legal conclusions to which no response is required. To the extent a response is required, IQVIA denies the allegations contained in Paragraph 96 of Plaintiff's Complaint.

97. If Defendant proffers a legitimate, nondiscriminatory reason for the rejection of employment, the burden shifts to the plaintiff to demonstrate that the proffered reason is pretext. *Id.*

**ANSWER:** Paragraph 97 of Plaintiff's Complaint contains legal conclusion to which no response is required. To the extent a response is required, IQVIA denies the allegations contained in Paragraph 97 of Plaintiff's Complaint.

98. Plaintiff is a member of a protected class for two distinct reasons, which Defendant was aware of when deciding not to hire her. First, she is a Christian. Second, her religious beliefs preclude her from receiving a COVID-19 vaccine and require accommodation. For the reasons detailed throughout, Ms. Goodson holds sincere religious beliefs that preclude

her from receipt of a COVID-19 vaccine and informed Defendant of her intent to apply for a religious exemption.

**ANSWER:**    Paragraph 98 of Plaintiff's Complaint contains legal conclusions to which no response is required.    To the extent a response is required, IQVIA denies the allegations contained in Paragraph 98 of Plaintiff's Complaint.

99.        Ms. Goodson's beliefs are indeed sincere, as evidenced by her willingness to uphold her beliefs while knowing she would be rejected from the position she was qualified for, applied for, and interviewed for with Defendant.

**ANSWER:**    Paragraph 99 of Plaintiff's Complaint contains legal conclusion to which no response is required.    To the extent a response is required, IQVIA denies the allegations contained in Paragraph 99 of Plaintiff's Complaint.

100.        For the reasons articulated here and above, Ms. Goodson is a member of a protected class.

**ANSWER:**    Paragraph 100 of Plaintiff's Complaint contains legal conclusions to which no response is required.    To the extent a response is required, IQVIA denies the allegations contained in Paragraph 100 of Plaintiff's Complaint.

101.        Ms. Goodson was qualified for and applied for the position of Assistant Director of Patient Engagement Strategy, a fully remote role with Defendant on March 7, 2023.

**ANSWER:**    IQVIA admits Plaintiff applied for the position of Assistant Director of Patient Engagement strategy on or about March 7, 2023. IQVIA denies the remaining allegations contained in Paragraph 101 of Plaintiff's Complaint.

102.        Ms. Goodson inquired about exemptions to Defendant's COVID-19 vaccine exemption policy and was immediately thereafter rejected from the position.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 102 of Plaintiff's Complaint.

103.     Following her unlawful rejection, the position was left open on pretextual grounds or filled with a candidate outside of Ms. Goodson's protected class.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 103 of Plaintiff's Complaint.

104.     Defendant did not engage in a good faith interactive process with Ms. Goodson to determine if it was possible to accommodate her sincere religious objections to receipt of a COVID-19 vaccine.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 104 of Plaintiff's Complaint.

105.     In fact, Defendant never responded to provide Ms. Goodson with their COVID-19 corporate religious exemption or medical accommodation corporate policy. The defendant admitted they were not aware of any such corporate policy, told her the hiring manager required her to get the COVID-19 vaccination, and they failed to provide to her any actual, potential accommodation or exemption options for the fully remote position she applied for. These circumstances indicate discrimination.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 105 of Plaintiff's Complaint.

106.     Defendant never offered Ms. Goodson the option to test regularly, even at her own expense, or any other potential accommodation in the unshown event she would have to travel to a client on behalf of Defendant.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 106 of Plaintiff's

Complaint.

107.    Ms. Goodson was informed that she was being denied the ability to continue the hiring process for a role she was well-qualified for and would have been offered. The denial was due to her membership in a protected class and need for accommodation. In other words, Defendant denied Ms. Goodson's application because it was motivated to avoid providing a religious accommodation, in reckless disregard of its Title VII obligations. Ms. Goodson was denied the ability to continue pursuing employment with Defendant under circumstances indicating discrimination.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 107 of Plaintiff's Complaint.

108.    For the role that Ms. Goodson was interviewing for, Defendant maintained a per se unlawful "no accommodation" policy.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 108 of Plaintiff's Complaint.

109.    If an applicant requires an accommodation from an employment policy in accord with her religious practices, it constitutes no defense that the subsequent failure to hire was due to an otherwise-neutral policy. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 776 (2015).

**ANSWER:**    Paragraph 109 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies Paragraph 109 of Plaintiff's Complaint.

110.    Despite multiple efforts, Ms. Goodson was never advised on any exemption process or paperwork she could fill out to submit an exemption request to the Mandate.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 110 of Plaintiff's Complaint.

111. Ms. Goodson was rejected from the position due to her membership in a protected class.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 111 of Plaintiff's Complaint.

112. Any reasons given for the rejection of Ms. Goodson relating to her unvaccinated status are pretextual.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 112 of Plaintiff's Complaint.

113. Defendant had actual knowledge that the COVID-19 vaccines did not stop the transmission or infection of COVID-19, and therefore, Ms. Goodson was no greater a health or safety threat to anyone (particularly, since the role was fully remote) than a vaccinated employee.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 113 of Plaintiff's Complaint.

114. The Supreme Court's recent ruling in *Groff v. DeJoy* 600 U.S. 447, 470 (2023) makes clear that an "employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.*

**ANSWER:** Paragraph 114 of Plaintiff's Complaint contains legal conclusions to which no response is required. To the extent a response is required, IQVIA denies Paragraph 114 of Plaintiff's Complaint.

115. When evaluating whether an accommodation would constitute an undue

burden, employers must take "into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id.* Thus, "courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Id.*

**ANSWER:**    Paragraph 115 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies Paragraph 115 of Plaintiff's Complaint.

116.    Defendant is a large and sophisticated organization with considerable resources. Defendant has substantial resources and as such is able to accommodate its religious employees to a greater degree and with less burden than employers with fewer resources.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 116 of Plaintiff's Complaint.

117.    Because there were multiple no-cost and low-cost accommodation options available, Defendant could have accommodated Ms. Goodson short of undue hardship.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 117 of Plaintiff's Complaint.

118.    The most obvious accommodation option was allowing Ms. Goodson to work remotely, as the position was a fully remote position.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 118 of Plaintiff's Complaint.

119.    Another accommodation option was regular testing in the unshown event travel was required, at an employee's expense, coupled with other safety protocols, which Ms.

Goodson would have willingly incurred at her own expense.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 119 of Plaintiff's Complaint.

120.    There were other low-cost and no-cost accommodation options Defendant refused to consider. In the event that Ms. Goodson was required to travel on-site to perform her job, she could have seamlessly performed her job through, inter alia: (1) providing regular proof of a negative COVID-19 test, which Ms. Goodson was willing to do at her own expense; (2) masking; (3) recognizing the scientific reality of natural immunity against COVID-19 as an accommodation option and inquiring whether Ms. Goodson possessed antibodies to COVID-19 from prior infection; (4) observing other enhanced safety protocols where necessary, like social distancing, masking, and quarantining when symptomatic; or (5) any combination of the above.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 120 of Plaintiff's Complaint.

121.    With any of these easily identifiable and low-cost, no-cost accommodation options, Ms. Goodson could have been accommodated with minimal or no burden to Defendant.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 121 of Plaintiff's Complaint.

122.    Defendant refused to consider, much less provide, any of the above-referenced accommodations options for Ms. Goodson, and would not even give Ms. Goodson information on the exemption process.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 122 of Plaintiff's Complaint.

123.    Instead, Defendant rejected Ms. Goodson from the interview process for

choosing to uphold her religious convictions.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 123 of Plaintiff's Complaint.

124.   These circumstances demonstrate unlawful discrimination, that Defendant was motivated to terminate Ms. Goodson's application due to her protected status.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 124 of Plaintiff's Complaint.

125.   Because her sincere religious beliefs precluded Ms. Goodson from receiving one of the COVID-19 vaccines, and in light of the fact Defendant knew that the required vaccines were incapable of preventing infection and transmission but would violate Ms. Goodson's sincerely held religious beliefs, Defendant's actions were in reckless disregard of Ms. Goodson's rights under Title VII.

**ANSWER:**   Paragraph 125 of Plaintiff's Complaint contains legal conclusions to which no response is required.   To the extent a response is required, IQVIA denies the allegations contained in Paragraph 125 of Plaintiff's Complaint.

126.   As a result of Defendant's unlawful actions, Ms. Goodson has suffered emotional and psychological distress from the loss of employment opportunity, loss of promotional opportunities, loss of pension benefits, salary increases, and the career uncertainty generated by Defendant's actions and the repeated coercion to disregard her bona fide religious beliefs in order to preserve her livelihood and career.

**ANSWER:**   IQVIA denies the allegations contained in Paragraph 126 of Plaintiff's Complaint.

127.   As a result of the discriminatory treatment Ms. Goodson experienced, she is

suffering from emotional distress which is or has been marked by lack of focus and mental errors in everyday life, depression, feelings of despondency, social anxiety, trouble sleeping, complete loss of sleep, and feelings of agitation and irritability.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 127 of Plaintiff's Complaint.

128.    As a result of Defendant's unlawful actions, Ms. Goodson has also suffered financial harm including loss of compensation, loss of benefits, loss of salary increases, loss and/or reduced coverage of health insurance, employee assistance program, short, and long-term disability insurance, company matched retirement, and accidental death insurance.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 128 of Plaintiff's Complaint.

129.    Defendant's actions were willful, wanton, and/or malicious, and demonstrate reckless disregard for Ms. Goodson's rights under Title VII.

**ANSWER:**    Paragraph 129 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 129 of Plaintiff's Complaint.

130.    As a direct and proximate result of Defendant's discriminatory treatment, Ms. Goodson has suffered, and continues to suffer, economic, pecuniary damages for which she is entitled to judgment.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 130 of Plaintiff's Complaint.

131.    The foregoing conduct constitutes illegal, and intentional failure to accommodate that is prohibited under 42 USC § 2000e-2 *et seq.*

**ANSWER:**     Paragraph 131 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 131 of Plaintiff's Complaint.

132.     Ms. Goodson seeks back pay, interest on back pay, the value of back benefits, and front pay all through the date of trial, attorney fees, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages.

**ANSWER:**     IQVIA admits Plaintiff seeks the categories of damages identified in Paragraph 132 of her Complaint, but denies Plaintiff is entitled to any relief whatsoever.  IQVIA further denies any allegations or implications contained in Paragraph 132 of Plaintiff's Complaint.

133.     As a direct and proximate result of the discriminatory treatment, Ms. Goodson has suffered, and continues to suffer, the damages hereinafter described. Accordingly, Ms. Goodson requests relief as hereinafter described.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 133 of Plaintiff's Complaint.

**COUNT TWO Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.**

**Religious Discrimination – Retaliation**

134.     Ms. Goodson incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

**ANSWER:**     IQVIA incorporates by reference its answers to paragraphs 1 – 133 of Plaintiff's Complaint as if set forth fully herein.

135.     Defendant retaliated against Ms. Goodson because she requested information on how to apply for an exemption to Defendant's COVID-19 vaccination requirement, which is

protected activity.

      **ANSWER:**    IQVIA denies the allegations contained in Paragraph 135 of Plaintiff's Complaint.

      136.    Ms. Goodson made Defendant aware that she was going to assert her Title VII rights and request an accommodation to Defendant's COVID-19 vaccination policy, which is protected activity.

      **ANSWER:**    IQVIA denies the allegations contained in Paragraph 136 of Plaintiff's Complaint.

      137.    To establish a *prima facie* case for retaliation under Title VII, a Plaintiff must present evidence that: (1) [s]he engaged in statutorily protected activity; (2) [s]he suffered a materially adverse action; and (3) there is a but-for causal connection between the two events. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

      **ANSWER:**  Paragraph 137 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 137 of Plaintiff's Complaint.

      138.    Ms. Goodson engaged in a statutorily protected activity when she requested Defendant to advise her on Defendant's COVID-19 vaccination accommodation process. Ms. Goodson made Defendant aware of her intention to file an accommodation request.

      **ANSWER:**    Paragraph 138 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 138 of Plaintiff's Complaint.

      139.    Ms. Goodson suffered a materially adverse action when she was told that she would no longer be considered for the position after informed Defendant of her intent to apply

for an accommodation to the COVID-19 vaccination requirement.

**ANSWER:**     Paragraph 139 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 139 of Plaintiff's Complaint.

140.     Ms. Goodson would not have been removed for consideration for the role she interviewed for if she did not advise Defendant that she was going to seek an accommodation to the COVID-19 vaccination requirement. But for Ms. Goodson's clear communications that she intended to exercise her Title VII rights and seek accommodation, she would not have been rejected from the position.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 140 of Plaintiff's Complaint.

141.     If Defendant proffers a legitimate, nondiscriminatory reason for the rejection of employment, the burden shifts to the plaintiff to demonstrate that the proffered reason is pretext. *Id.*

**ANSWER:**  Paragraph 141 of Plaintiff's Complaint contains legal conclusion to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 141 of Plaintiff's Complaint.

142.     For the reasons detailed throughout, Ms. Goodson holds sincere religious beliefs that preclude her from receipt of a COVID-19 vaccine and informed Defendant of her intent to apply for a religious exemption.

**ANSWER:**  Paragraph 142 of Plaintiff's Complaint contains legal conclusions to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 142 of Plaintiff's Complaint.

143.    Ms. Goodson's beliefs are indeed sincere, as evidenced by her willingness to uphold her beliefs while knowing she would be rejected from the position she was qualified for, applied for, and interviewed for with Defendant.

**ANSWER:**  Paragraph 143 of Plaintiff's Complaint contains legal conclusions to which no response is required.   To the extent a response is required, IQVIA denies the allegations contained in Paragraph 143 of Plaintiff's Complaint.

144.    Ms. Goodson inquired about religious and medical exemptions to Defendant's COVID-19 vaccine exemption policy and was immediately thereafter rejected from the position without ever being informed of the accommodation policy or process.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 144 of Plaintiff's Complaint.

145.    Defendant did not engage in a good faith interactive process with Ms. Goodson to determine if it was possible to accommodate her sincere religious objections to receipt of a COVID-19 vaccine.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 145 of Plaintiff's Complaint.

146.    Defendant never offered Ms. Goodson the option to test regularly, even at her own expense, or any other potential accommodation in the unshown event she would have to travel to a client on behalf of Defendant.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 146 of Plaintiff's Complaint.

147.    Despite multiple efforts, Ms. Goodson was never advised on any exemption process or paperwork she could fill out to submit a religious or medical exemption request to the

Mandate.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 147 of Plaintiff's Complaint.

148.    For these reasons, any justifications given for the rejection of Ms. Goodson relating to her unvaccinated status are pretextual.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 148 of Plaintiff's Complaint.

149.    Defendant had actual knowledge that the COVID-19 vaccines did not stop the transmission or infection of COVID-19, and therefore, Ms. Goodson was no greater a health or safety threat to anyone (particularly, since the role was fully remote) than a vaccinated employee.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 149 of Plaintiff's Complaint.

150.    The Supreme Court's recent ruling in *Groff v. DeJoy* 600 U.S. 447, 470 (2023) makes clear that an "employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id*.

**ANSWER:** Paragraph 150 of Plaintiff's Complaint contains legal conclusion to which no response is required. To the extent a response is required, IQVIA denies the allegations contained in Paragraph 150 of Plaintiff's Complaint.

151.    When evaluating whether an accommodation would constitute an undue burden, employers must take "into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id.* Thus, "courts should resolve whether a hardship would be

substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Id.*

**ANSWER:** Paragraph 151 of Plaintiff's Complaint contains legal conclusion to which no response is required. To the extent a response is required, IQVIA denies the allegations contained in Paragraph 151 of Plaintiff's Complaint.

152. Defendant is a large and sophisticated organization with considerable resources. Defendant has substantial resources and as such is able to accommodate its religious employees to a greater degree and with less burden than employers with fewer resources.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 152 of Plaintiff's Complaint.

153. Because there were multiple no-cost and low-cost accommodation options available, Defendant could have accommodated Ms. Goodson short of undue hardship.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 153 of Plaintiff's Complaint.

154. The most obvious accommodation option was allowing Ms. Goodson to work remotely, as the position was a fully remote position.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 154 of Plaintiff's Complaint.

155. Another accommodation option was regular testing, at an employee's expense, coupled with other safety protocols, which Ms. Goodson would have willingly incurred at her own expense.

**ANSWER:** IQVIA denies the allegations contained in Paragraph 155 of Plaintiff's Complaint.

156.     There were other low-cost and no-cost accommodation options Defendant refused to consider. In the event that Ms. Goodson was required to travel on-site to perform her job, she could have seamlessly performed her job through, inter alia: (1) providing regular proof of a negative COVID-19 test, which Ms. Goodson was willing to do at her own expense; (2) masking; (3) recognizing the scientific reality of natural immunity against COVID-19 as an accommodation option and inquiring whether Ms. Goodson possessed antibodies to COVID-19 from prior infection; (4) observing other enhanced safety protocols where necessary, like social distancing, masking, and quarantining when symptomatic; or (5) any combination of the above.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 156 of Plaintiff's Complaint.

157.     With any of these easily identifiable and low-cost, no-cost accommodation options, Ms. Goodson could have been accommodated with minimal or no burden to Defendant.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 157 of Plaintiff's Complaint.

158.     Defendant refused to consider, much less provide, any of the above-referenced accommodations options for Ms. Goodson, and would not even give Ms. Goodson information on the exemption process.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 158 of Plaintiff's Complaint.

159.     Instead, Defendant rejected Ms. Goodson from the interview process in retaliation for engaging in protected activity.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 159 of Plaintiff's Complaint.

160.    Because her sincere religious beliefs precluded Ms. Goodson from receiving one of the COVID-19 vaccines, and in light of the fact Defendant knew that the required vaccines were incapable of preventing infection and transmission, but would violate Ms. Goodson's sincerely held religious beliefs, Defendants actions were in reckless disregard of Ms. Goodson's rights under Title VII.

**ANSWER:**    Paragraph 160 of Plaintiff's Complaint contains legal conclusion to which no response is required.   To the extent a response is required, IQVIA denies the allegations contained in Paragraph 160 of Plaintiff's Complaint.

161.    As a result of Defendant's unlawful actions, Ms. Goodson has suffered emotional and psychological distress from the loss of employment opportunity, loss of promotional opportunities, loss of pension benefits, salary increases, and the months of uncertainty and repeated coercion to disregard her bona fide religious beliefs in order to preserve her livelihood and career.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 161 of Plaintiff's Complaint.

162.    As a result of the discriminatory treatment Ms. Goodson experienced, she is suffering from emotional distress which is or has been marked by lack of focus and mental errors in everyday life, depression, feelings of despondency, social anxiety, trouble sleeping, complete loss of sleep, and feelings of agitation and irritability.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 162 of Plaintiff's Complaint.

163.    As a result of Defendants' unlawful and retaliatory actions, Ms. Goodson has also suffered financial harm including loss of compensation, loss of benefits, loss of salary

increases, loss and/or reduced coverage of health insurance, employee assistance program, short, and long- term disability insurance, company matched retirement, and accidental death insurance.

**ANSWER:**    IQVIA denies the allegations contained in Paragraph 163 of Plaintiff's Complaint.

164.    Defendant's actions were willful, wanton, and/or malicious, and demonstrate reckless disregard for Ms. Goodson's rights under Title VII. As a direct and proximate result of Defendants' discriminatory and retaliatory treatment, Ms. Goodson has suffered, and continues to suffer, economic, pecuniary damages for which she is entitled to judgment.

**ANSWER:**    Paragraph 164 of Plaintiff's Complaint contains legal conclusion to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 164 of Plaintiff's Complaint.

165.    The foregoing conduct constitutes illegal, and intentional retaliation that is prohibited under 42 USC § 2000e-2 *et seq*.

**ANSWER:**    Paragraph 165 of Plaintiff's Complaint contains legal conclusion to which no response is required.  To the extent a response is required, IQVIA denies the allegations contained in Paragraph 165 of Plaintiff's Complaint.

166.    Ms. Goodson seeks back pay, interest on back pay, the value of back benefits, and front pay all through the date of trial, attorney fees, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages.

**ANSWER:**   IQVIA admits Plaintiff is seeking the categories of relief identified in Paragraph 166 of Plaintiff's Complaint, but denies Plaintiff is entitled to any relief whatsoever.

IQVIA denies the remaining allegations contained in Paragraph 166 of Plaintiff's Complaint.

167.     As a direct and proximate result of the discriminatory treatment, Ms. Goodson has suffered, and continues to suffer, the damages hereinafter described. Accordingly, Ms. Goodson requests relief as hereinafter described.

**ANSWER:**     IQVIA denies the allegations contained in Paragraph 167 of Plaintiff's Complaint.

## VI.     PRAYER FOR RELIEF

**ANSWER:** IQVIA admits Plaintiff purports to seek the categories of relief identified in the Prayer for Relief Section of Plaintiff's Complaint, but denies Plaintiff is entitled to any relief whatsoever. IQVIA denies any remaining allegations contained in the Prayer for Relief Section of Plaintiff's Complaint.

## VII.     DEMAND FOR JURY TRIAL

**ANSWER:**     IQVIA admits Plaintiff has included a Demand for Jury Trial in Plaintiff's Complaint, but denies Plaintiff is entitled to a jury determination on any issue not properly brought before a jury. IQVIA denies any remaining allegations contained in the Demand for Jury Trial Section of Plaintiff's Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Subject to a reasonable opportunity for further investigation and discovery, and without shifting the burden of proof on any issue for which Plaintiff bears that burden, IQVIA states the following defenses:

1.     Plaintiff's claims are barred to the extent Plaintiff failed to satisfy the statutory, administrative and/or jurisdictional prerequisites to suit and/or to the extent she seeks to base her claims on events occurring outside the applicable statute of limitations.

2.      Plaintiff's claims are barred to the extent they exceed the scope of the operative administrative charge of discrimination.

3.      IQVIA would have taken the same actions regarding Plaintiff in the absence of any unlawful motivating factor, if such a factor existed.

4.      Plaintiff's recovery for any claim is barred to the extent she failed to mitigate her damages, and IQVIA is entitled to a setoff to the extent of any mitigation.

5.      IQVIA did not take actions in knowing or reckless disregard of Plaintiff's protected rights and did not willfully violate any laws with respect to treatment of Plaintiff; therefore, Plaintiff is not entitled to punitive damages.

6.      IQVIA exercised reasonable care to prevent and correct the complained-of behavior, if any such conduct occurred.

7.      Plaintiff unreasonably failed to take advantage of the preventative and corrective opportunities provided by IQVIA or to otherwise avoid harm.

8.      IQVIA maintains, communicates, and effectively implements policies that forbid discrimination and retaliation in the workplace, including a mechanism by which complaints of such conduct are investigated and effectively remedied.

9.      All actions taken with regard to Plaintiff's employment were for legitimate, non-discriminatory reasons and in good faith, without any malice and without any intent to injure or harm Plaintiff; therefore, no violation of any law has occurred.

10.      To the extent Plaintiff's claims are based on actions allegedly taken by persons other than IQVIA or its agents, or based on conduct that is outside the scope of employment, IQVIA is not responsible for such actions, vicariously or otherwise.

11.      Plaintiff cannot demonstrate the existence of a sincerely held religious belief and

therefore cannot establish a basis for liability under Title VII of the Civil Rights Act of 1964.

12.    To the extent Plaintiff is able to demonstrate the existence of a sincerely held religious belief, any accommodation Plaintiff alleges she should have been provided would have posed an undue hardship for IQVIA.

WHEREFORE, IQVIA respectfully requests Plaintiff take nothing by way of her Complaint and that Plaintiff's Complaint be dismissed in its entirety and with prejudice.

Dated August 19, 2025                            Respectfully submitted,

                                                 /s/ Peter T. Tschanz
                                                 Peter T. Tschanz, Bar No. 29520-49
                                                 ptschanz@littler.com

                                                 *Attorney for Defendant*

LITTLER MENDELSON, P.C.
111 Monument Circle
Suite 702
Indianapolis, IN  46204
Telephone:    317.287.3600
Facsimile:    317.636.0712

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 19th day of August 2025 the foregoing was filed electronically through the ECF system, is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filings, including Plaintiff's counsel of record.

                                                 /s/Peter T. Tschanz
                                                 Peter T. Tschanz